1                UNITED STATES BANKRUPTCY COURT
       FOR THE SOUTHERN DISTRICT OF NEW YORK (POUGHKEEPSIE)

2

3  IN RE:                  .  Chapter 13
                       .  Case No. 19-35944 (CGM)

4  MCCHESNEY EMANUEL,     .
                       .

5                       .  355 Main Street
             Debtor.   .  Poughkeepsie, New York 12601

6                       .
                       .  Tuesday, November 19, 2019

7  . . . . . . . . . . . . . . .  11:06 a.m.

8

9                TRANSCRIPT OF ZOOM HEARING
        BEFORE THE HONORABLE CECELIA G. MORRIS
           UNITED STATES BANKRUPTCY JUDGE

10

11                    Hearing on:
    Doc #28 Notice of Adjournment of Hearing re: Notice of

12  Hearing to consider the Letter Requesting Dismissal of Case
  Filed by Zhanghui Fang (related document(s)21); Hearing not

13  held and adjourned to 11/19/2019 at 09:30 AM at Poughkeepsie
          Courthouse - 355 Main Street (DuBois, Linda).

14
  Doc #21 Letter Requesting Dismissal of Case Filed by Zhanghui

15              Fang. (DuBois, Linda)

16     Doc #29 Notice of Adjournment of Hearing re: Opposition
  (related documents 21 and 22) (related document(s)21) filed

17  by Thomas W. Bauer on behalf of McChesney Emanuel; Hearing
     not held and adjourned to 11/19/2019 at 09:30 AM at

18  Poughkeepsie Courthouse - 355 Main Street (DuBois, Linda).

19

20  Electronically
  Recorded By:         ECRO

21
  Transcription Service:   Reliable

22                   1007 N. Orange Street
                   Wilmington, Delaware 19801

23                   Telephone: (302) 654-8080
                   E-Mail:  gmatthews@reliable-co.com

24

25  Proceedings recorded by electronic sound recording:
  transcript produced by transcription service.

1  APPEARANCES:

2  For the Debtor:            Thomas W. Bauer, Esquire
                              THOMAS W. BAUER, ESQ. CPA
3                             42 Catharine Street
                              Poughkeepsie, New York 12601

4

5  For the Chapter 13
   Trustee:                   Dennis Jose, Esquire
6                             DENNIS JOSE, ESQUIRE
                              900 Merchants Concourse
7                             Suite 116
                              Westbury, New York 11590

8

9  ALSO APPEARING:

10 In Propria Persona:        Fang Zhanghui, Pro Per

11                            Mr. Roble

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>INDEX</u>

<u>MOTIONS</u>:                                                          <u>PAGE</u>

Docket
No. 28:    Notice of Adjournment of Hearing re: Notice of      4
           Hearing to consider the Letter Requesting
           Dismissal of Case Filed by Zhanghui Fang
           (related document(s)21); Hearing not held and
           adjourned to 11/19/2019 at 09:30 AM at
           Poughkeepsie Courthouse - 355 Main Street
           (DuBois, Linda).

           Court's Ruling:                                     --

Docket
No. 21:    Letter Requesting Dismissal of Case Filed by        4
           Zhanghui Fang. (DuBois, Linda)

           Court's Ruling:                                     --

Docket
No. 29:    Notice of Adjournment of Hearing re:                4
           Opposition (related documents 21 and 22)
           (related document(s)21) filed by Thomas W.
           Bauer on behalf of McChesney Emanuel; Hearing
           not held and adjourned to 11/19/2019 at 09:30
           AM at Poughkeepsie Courthouse - 355 Main
           Street (DuBois, Linda).

           Court's Ruling:                                     --

Transcriptionist's Certificate                                 25

1          (Proceedings commenced at 11:06 a.m.)

2               THE COURT:  19-35944, McChesney Emanuel.

3               MR. BAUER:  Good morning, Your Honor.

4               Thomas Bauer for the debtor, who is approaching

5     counsel table.

6               THE COURT:  Is Ms. Saltz in the courtroom?

7               THE CLERK:  She was in the hall a moment ago.

8               THE COURT:  She's in the hall?

9               Okay.  Very good.

10              McChesney Emanuel.

11              Restate your name for me.

12              MR. BAUER:  Thomas Bauer for the debtor and the

13    debtor is in the courtroom.

14              THE COURT:  Okay.

15              Yes, sir?

16              MR. ZHANGHUI:  Hi, my name is Zhanghui.  I'm one

17    of the creditors in this case.

18              THE COURT:  Very good.

19              MR. JOSE:  Dennis Jose for the Chapter 13 Trustee,

20    Judge.

21              THE COURT:  Okay.  And you, Mister --

22              MR. ZHANGHUI:  Zhanghui.

23              THE COURT:  And you -- who are you, again?

24              MR. ZHANGHUI:  I'm, actually, I'm the creditor.

25    I'm not a lawyer.

1        THE COURT:  Okay.  Raise your right hand, please.

2        Do you solemnly swear the testimony you're about

3   to give is the truth, the whole truth, and nothing but the

4   truth?

5        MR. ZHANGHUI:  Yes, I do.

6        THE COURT:  State your full name.

7        MR. ZHANGHUI:  Zhanghui Fang.

8        THE COURT:  And your address, please?

9        MR. ZHANGHUI:  127 Garth Road, Scarsdale, New

10  York, 10583.

11       THE COURT:  Very good.

12       And this is your letter asking for dismissal of

13  this case; is that correct?

14       MR. ZHANGHUI:  Correct.

15       THE COURT:  And it seems that you say that you're

16  owed over $200,000; is that correct?

17       MR. ZHANGHUI:  Yeah, he owes me over $200,000.

18       THE COURT:  Did -- okay.  Did he borrow it himself

19  or did his company borrow it?

20       MR. ZHANGHUI:  That's something I want to find

21  out, maybe through the Court.  He borrowed the money, saying

22  to buy a commercial property under his company's name, called

23  the Chez Technologies.  And I have -- I don't know whether he

24  truly used my money to buy the house or buy the property or

25  not and I don't know whether he sold the property or not.  I

1   can't tell for sure because based off his email

2   communications, it sounds like he sold the property, but he

3   promised me to pay me back upon the sale of the property and

4   I never got paid back, you know, he never paid me back.  And

5   so I have to go to the Court to pursue, you know, just

6   getting my money back.  After --

7           THE COURT:  Let me just slow you down for a moment

8   and explain something.

9           MR. ZHANGHUI:  All right.

10          THE COURT:  Most often in the courts, we all wear

11   different hats.  I'm a mother.  I'm a judge.  I'm a friend.

12   I'm a sister.

13          MR. ZHANGHUI:  Uh-huh.

14          THE COURT:  I'm a daughter.

15          And you, too, wear different hats.  And one of the

16   things we have are different entities.  You have a corporate

17   entity and an individual entity.

18          MR. ZHANGHUI:  Right.

19          THE COURT:  And even if your documents, you said

20   that he was -- it was Chez Technologies that, basically, you

21   invested in; is that correct?

22          MR. ZHANGHUI:  No, it was not an investment.

23          He borrowed the money from me and he claimed to

24   use the money to buy some property.

25          THE COURT:  Do you have any written documentation?

1         MR. ZHANGHUI:  Yes, I do.

2         THE COURT:  Put it right there so I can see it.

3         MR. ZHANGHUI:  All right.

4         THE COURT:  You put it there as if you're reading

5    it --

6         MR. ZHANGHUI:  Sure.

7         THE COURT:  -- then I can see it.

8         MR. ZHANGHUI:  Right here?

9         THE COURT:  Uh-huh.  But put it as if you would

10   read it.

11        MR. ZHANGHUI:  Okay.  So --

12        THE COURT:  Okay.  I see that.

13        MR. ZHANGHUI:  So he asked me to --

14        THE COURT:  Go through every page very slowly.

15        MR. ZHANGHUI:  Sure.

16        So it's a 5 percent note.

17        THE COURT:  And it's Mr. Emanuel's letterhead?

18        MR. ZHANGHUI:  Yes, he's the creditor -- I mean,

19   the debtor on this case.

20        And as you can see -- how do I -- oh, yeah, here

21   we go -- so you can see that.  So, he is borrowing the money

22   from me to buy the property at 535 Route 52, Fishkill, New

23   York.

24        THE COURT:  Uh-huh.

25        MR. ZHANGHUI:  And that was the purpose --

1          THE COURT:  Okay.

2          MR. ZHANGHUI:  -- of him borrowing money from me.

3          THE COURT:  And the second page?

4          MR. ZHANGHUI:  And the second page, it is

5   basically, you know, it's a six-month note, so he would pay

6   me back by --

7          THE COURT:  And who is Michelle Wayne (phonetic)?

8          MR. ZHANGHUI:  Michelle is actually one of my

9   assistants.  I'm originally from China, so I, you know, I

10  actually traveled 20 hours back from China just to attend

11  this hearing.

12         THE COURT:  Okay.

13         MR. ZHANGHUI:  This is very important for me.

14  It's my personal money.  I don't want to just lose it.

15         THE COURT:  Sure.  Okay.

16         MR. ZHANGHUI:  So, yeah, Michelle is my assistant.

17  She's basically --

18         THE COURT:  And you're in Beijing?

19         MR. ZHANGHUI:  Actually, I spend more time in

20  Shanghai than Beijing, but I have some business in Beijing,

21  as well.

22         THE COURT:  Okay.  Next page?

23         MR. ZHANGHUI:  So let me go to the next page.

24         Yeah, so this next page basically says --

25         THE COURT:  That's okay.  Just go to the next

1   page. I just want to see it as a quick glance right now.

2          And that's the signature page?

3          MR. ZHANGHUI: Right.

4          THE COURT: Okay.

5          MR. ZHANGHUI: And I have one more page I would

6   like to --

7          THE COURT: No, that's sufficient for me.

8          MR. ZHANGHUI: Okay.

9          THE COURT: If you'll just sit down for a moment

10   now --

11          MR. ZHANGHUI: Sure.

12          THE COURT: -- and listen to Mr. Bauer.

13          MR. ZHANGHUI: All right.

14          THE COURT: Mr. Bauer?

15          MR. BAUER: Your Honor, the debtor doesn't dispute

16   that he owes Mr. Fang the money --

17          THE COURT: Yeah, it's a secured debt.

18          MR. BAUER: -- in fact, there's a judgment in

19   State Court and it was listed --

20          THE COURT: Right. Right.

21          MR. BAUER: -- on the debtor's petition as a

22   personal loan.

23          THE COURT: Right. Well, it's a secured debt, it

24   looks like.

25          MR. BAUER: And it is a secured debt and there

1   would be a mortgage on whatever property Mr. Fang is saying

2   is in his note --

3           THE COURT:  That's not necessarily true.

4           MR. BAUER:  -- so I don't --

5           THE COURT:  Just because a mortgage hasn't been

6   filed doesn't make it an unsecured debt.  So that's a

7   different story, but that's -- it's not -- it's still a

8   secured debt.

9           MR. BAUER:  It's the debtor's contention, with

10  respect to the allegations made -- the allegations made is

11  that Mr. Emanuel did not list the corporation on his

12  schedules or statement of financial affairs.  The corporation

13  is actually owned by the debtor's wife.

14          Number two, the corporation hasn't done

15  business --

16          THE COURT:  But this is an individual debt by this

17  individual to this individual, so he might have filed a claim

18  for unsecured, but I think it may be a claim for secured.

19          MR. BAUER:  I don't think that's --

20          THE COURT:  And since we have a *pro se* creditor,

21  you would know better than I do, or as much as I do, that we

22  treat this --

23          MR. BAUER:  Whether it's secured or unsecured --

24          THE COURT:  -- and what I have is a motion, yeah.

25          MR. BAUER:  -- yeah, I think that's irrelevant to

1  our argument.  Our argument is, basically, the corporation

2  hasn't existed since 2017.

3          THE COURT:  It's not the corporation; it's an

4  individual debt.

5          Mr. Fang?

6          MR. ZHANGHUI:  Zhanghui.

7          THE COURT:  Zhanghui.  It's -- okay.

8          You really do not want this case dismissed.

9          MR. ZHANGHUI:  Correct.

10          THE COURT:  You want it to stay in this court?

11          MR. ZHANGHUI:  Correct.  I want to at least find

12  out what happened to the --

13          THE COURT:  Please stand when you speak to me.

14          MR. ZHANGHUI:  Oh, I'm so sorry.

15          THE COURT:  Thank you.

16          MR. ZHANGHUI:  Sorry.

17          THE COURT:  Okay.  Well --

18          MR. ZHANGHUI:  If I could add a few more?

19          THE COURT:  Sure, you can.

20          MR. ZHANGHUI:  Okay.  So what really puzzled me so

21  much, and I suspect that the debtor is hiding money from

22  me --

23          THE COURT:  Mr. Zhanghui --

24          MR. ZHANGHUI:  Yes?

25          THE COURT:  -- you -- with the amount of money you

1   have --

2              MR. ZHANGHUI:  Right.

3              THE COURT:  -- invested, you need a lawyer.

4              MR. ZHANGHUI:  Yes.

5              THE COURT:  All right.

6              MR. ZHANGHUI:  I spent, just to get my money back

7   through the court process, I already spent close to $20,000,

8   you know, with the legal fees.  And I just felt that --

9              THE COURT:  Okay.  Well, let me ask you one thing.

10  Do you think he sold this collateral without paying you?

11             MR. ZHANGHUI:  Correct.

12             And I want to find out where the money went.  I

13  want to find out how he spent -- you know, basically, I just

14  want to know where the money went.  And it doesn't make any

15  sense to me within a little over a year, he could spend

16  $380,000.  And now he, just a couple months in, he filed

17  personal bankruptcy.  To me, that doesn't make any sense.

18             And, also, if I could add just one more?  You

19  know, he, Mr. Emanuel said through the, I guess, the legal

20  sort of documents, you know, he filed with his legal counsel,

21  the company Chez Technologies didn't exist in -- since 2010.

22  But he asked me to wire the money.  I have all the written

23  documents, evidence.

24             THE COURT:  I don't think there's any controversy

25  that -- there is no controversy that the money was given.

1              MR. ZHANGHUI:  Okay.  The money was wired to his

2     company account in 2012.  So I think that this really, I

3     think what he was trying to say is the company didn't exist.

4              So I have, you know, again, the --

5              THE COURT:  You've given me a lot of information

6     and it's honestly not in a legal form.

7              MR. ZHANGHUI:  Because this is legal process was

8     done in Manhattan.  We had it done through the whole process

9     in Manhattan through -- I don't know -- two years -- almost

10    two years in the process.

11             THE COURT:  Do you know when the property was

12    sold?

13             MR. BAUER:  I believe Mr. Creditor [sic] is

14    talking about the judgment that was entered.

15             MR. ZHANGHUI:  There was a judgment entered.

16             MR. BAUER:  Yes.  Yeah, and the debtor doesn't

17    dispute that.  We had Mr. Creditor listed on his petition.

18             And the letter to the Court is addressed,

19    basically, Mr. Emanuel didn't list the corporation as

20    something he's owned.

21             THE COURT:  Well, he's saying -- just so you

22    know --

23             MR. ZHANGHUI:  Yeah?

24             THE COURT:  -- Mr. Bauer is saying that you are a

25    creditor of Mr. Emanuel.  So you are owed money through this

1    bankruptcy.

2         MR. BAUER:  Absolutely.

3         MR. ZHANGHUI:  I understand that.  That's, you

4    know, what's given --

5         THE COURT:  And what you're, then, saying, though,

6    is there's an asset that hasn't been listed?

7         MR. ZHANGHUI:  I think that there's either, he's

8    hiding money from me, from us, from the Court, or he has

9    conducted, maybe, fraudulent activities, which I want to find

10   out.

11        THE COURT:  Well, let's all go back to this

12   property in Fishkill.

13        MR. ZHANGHUI:  Sure.

14        THE COURT:  You say that was sold?

15        MR. ZHANGHUI:  I believe it was sold.  He told me

16   it was sold and I have the document.  I can --

17        THE COURT:  Put it right there.

18        MR. ZHANGHUI:  So this is the document that he

19   sent to me in, I think in, like, 2016 and he started, you

20   know, making the sale.  In --

21        THE COURT:  But do you know it was sold?

22        MR. ZHANGHUI:  I believe it was sold.  I -- he

23   didn't -- he was not telling the truth anymore to me, so I

24   wanted to find out, you know, sort of the process.

25             And he -- also, I have a letter, if you don't

1   mind --

2              THE COURT:  Mr. Jose, did you happen to see if

3   this property was listed on the schedules or was it a --

4              MR. JOSE:  We didn't, Judge.  We come in here just

5   to get the information as --

6              THE COURT:  Yeah, I am, too.  I'm trying to learn.

7              MR. BAUER:  This property, for the record --

8              THE COURT:  Yes, Mr. Bauer?

9              MR. BAUER:  -- this property was not listed on the

10  debtor's petition.

11             THE COURT:  Because it's part of the corporation?

12             MR. BAUER:  Either it was owned by the corporation

13  or the debtor didn't have it.

14             THE COURT:  It was sold already?

15             Well, he said in that, that it -- okay.  Because

16  it was -- he loaned the money individually to Mr. Emanuel.

17             MR. BAUER:  If it was sold, it was sold over two

18  years before the petition was filed and wouldn't have been

19  required to be listed on the petition as a transfer within

20  two years.

21             I've had an opportunity to speak to the Trustee's

22  Office.  Before confirmation, this issue came up and

23  Mr. Emanuel did list his consulting business.  That was a

24  question.

25             The question was, was there income still derived

1 | from the corporation that needs to be listed on Schedule I?

2 | And the answer is no.

3 | THE COURT: But this isn't a corporation. He

4 | loaned the money to a piece of property and you don't know

5 | whether or not it was sold, Mr. Bauer --

6 | MR. BAUER: I believe it was sold.

7 | THE COURT: -- that belongs to this individual?

8 | MR. BAUER: I believe it was sold over two years

9 | before the petition was filed.

10 | THE COURT: But the money was not given over to

11 | this creditor?

12 | MR. BAUER: Maybe not.

13 | MR. ZHANGHUI: And if you could, Your Honor --

14 | MR. BAUER: My client is informing me it was a

15 | forced sale --

Emanule made a false statement.
It was not a forced sale.
Please see the Closing Statement and Contract of Sale of Real Property.
Emanuel was the only seller and willing seller. All the purchase money was distributed to Emanuel and his real estate agent but no one else.

16 | THE COURT: What do you mean by that?

17 | MR. EMANUEL: It was just to pay off the, it was a

18 | (indiscernible) mortgage --

19 | MR. BAUER: When the property was sold, the

20 | mortgage securing the property was paid.

Emanuel made another false statement. There was no other mortgage that he paid. See attached Closing Statement.
Emanul took all the money to himself instead of paying back the secured note.

21 | THE COURT: Including this gentleman's mortgage?

22 | MR. EMANUEL: He didn't have a mortgage.

23 | MR. BAUER: This gentleman didn't have a mortgage

24 | on the property.

25 | THE COURT: But he had a note on the property.

1     MR. BAUER:  There's a note, but there's no

2  mortgage.  And in New York State --

3     THE COURT:  It is a secured debt.

4     MR. BAUER:  That may be true, but if there's no

5  mortgage filed in the County...

6     MR. ZHANGHUI:  In addition to, Your Honor, in

7  addition to that, I just also want to present to you, once I

8  started getting nervous because he was not paying me back, I

9  asked him to come to the law office in New York, I mean, in

10 actually, in Queens and he agreed to pay me back of the sale

11 proceeds of this property just, you know, again, confirming

12 what was written on the note.

13     THE COURT:  So he has a secured debt.

14     MR. BAUER:  Right.

15     MR. ZHANGHUI:  And it was very clearly stated that

16 he is the 100 percent, he's the sole beneficiary owner of

17 this real estate at 535 Route 52 Fishkill.  And he said the

18 undersigned agreed to pay the full amount of the debt to the

19 creditor as a first priority directly out of the sale

20 proceeds of the property and the closing of the sale

21 transaction.

22     And then he never did, and just to me, it's a

23 fraudulent --

24     THE COURT:  Okay.  I need evidence of when this

25 was sold.

1          Mr. Jose?

2          MR. JOSE:  Your Honor, I think at this point in

3    time, the creditor clearly has a lot of options, 2004, and

4    I'm not going to go through (indiscernible), but I think he

5    desperately needs counsel to proceed.

6          THE COURT:  You desperately -- Mr. Jose is right,

7    you really need U.S. counsel.

8          MR. ZHANGHUI:  Yeah, I need --

9          THE COURT:  Because I do think you have some

10   rights and we want to make sure those rights are preserved.

11         MR. ZHANGHUI:  I appreciate that.

12         THE COURT:  And what we're going to do, though, is

13   deny the dismissal of this case, because you want to be in

14   this court.  We're the better court to be in.

15         MR. ZHANGHUI:  Okay.  I -- without understanding a

16   lot of things, but I trust that this Court will give me the

17   chance to discover to find out what happened to the money

18   that I loaned to him.  What happened to the money he --

19         THE COURT:  Well, there's still something going

20   on.

21         MR. ZHANGHUI:  Sure.

22         THE COURT:  If we have a proven, undisclosed

23   asset, then there will be a dismissal.

24         Mr. Bauer?

25         MR. BAUER:  Just to be clear, on the bankruptcy

1  petition, transfers, are to be listed within two years of

2  filing the bankruptcy petition.  So if the debtor did --

3            THE COURT:  We're adjourning this --

4            MR. BAUER:  -- clearly own --

5            THE COURT:  -- for you to get counsel, for you to

6  get an attorney to help us deal with this.

7            MR. ZHANGHUI:  Okay.  And I also --

8            THE COURT:  So, I'm not denying your motion right

9  now.  You need to get counsel.

10           MR. ZHANGHUI:  Okay.  I will do it.

11           I also just want to add that, you know, every

12  penny, every dollar that I loaned to him is really -- I made,

13  I earned, you know, every penny a very hard way.  It's not

14  easy money that I got from out of the blue.

15           THE COURT:  Just so you know, almost everybody in

16  this courtroom feels the same way.

17           MR. ZHANGHUI:  Okay.  I understand that.

18           So, just (indiscernible) --

19           THE COURT:  And what your attorney is going to

20  help do is find -- you need to find an attorney and what

21  they're going to help do is find out when this property was

22  sold, what it was sold for, why -- what's going on about it.

23           MR. ZHANGHUI:  But I think my legal counsel

24  wouldn't be able to find --

25           THE COURT:  Yes, it's --

1           MR. ZHANGHUI:  -- to discover the money, where he

2   distributed the money to.  I want to find out where did he

3   send the money to.  I think that he's hiding the money from

4   me.

5           MR. BAUER:  My client is acknowledging that it was

6   sold in 2017 and it was over two years from the petition

7   date.  It's not something that would be scheduled on the

8   petition as a transfer.

9           MR. ZHANGHUI:  Sorry to interrupt.

10          THE COURT:  The lawyer will find it out.  The

11  lawyer representing this creditor.

12          So, please, find yourself counsel.

13          MR. ZHANGHUI:  Okay.

14          THE COURT:  So --

15          MR. ZHANGHUI:  And I think this is all carefully

16  designed by the debtor, because he was talking about two

17  years before --

18          THE COURT:  You have brought something up that the

19  debtor is going to have to prove --

20          MR. ZHANGHUI:  Okay.

21          THE COURT:  -- to me that it was sold two years

22  before.  Mr. Bauer, the debtor's counsel will look at that

23  very carefully himself and he will look at the County records

24  and make sure that it was there.

25          MR. BAUER:  I believe I have a closing

1  statement --

2           THE COURT:  Okay.

3           MR. BAUER:  -- but I don't have it with me.

4           THE COURT:  That'll be perfect.

5           So you need to get representation and I'm -- when

6  are you going back to China?

7           MR. ZHANGHUI:  My flight is scheduled for next

8  Tuesday.  If I have to --

9           THE COURT:  Okay.  If you --

10          MR. ZHANGHUI:  -- I will fly back.

11          THE COURT:  No.

12          Well, you try to find counsel, because once you

13  have legal counsel -- and your English is excellent --

14          MR. ZHANGHUI:  Oh, thank you.  I appreciate that.

15          THE COURT:  -- once you find legal counsel, the

16  legal counsel can come to court for you, which is possibly

17  cheaper than flying back and forth from China.

18          I know it's easier on the body.  I, too, have

19  flown from JFK to Shanghai and I understand.

20          MR. ZHANGHUI:  Yes, it's 14 hours of flying.

21          THE COURT:  I know it is; it's long.

22          MR. ZHANGHUI:  It's just that I felt that me being

23  here, being with the person, talking to the person owing

24  them, I felt I just wanted to find out the truth.  What

25  happened to the money and --

1          THE COURT:  Okay.  What --

2          MR. ZHANGHUI:  -- where did he send the money to

3    after he sold the house?

4          THE COURT:  And just let me explain something

5    about court systems.

6          MR. ZHANGHUI:  Sure.

7          THE COURT:  What you're asking normally does not

8    happen in a courtroom.

9          MR. ZHANGHUI:  Okay.

10          THE COURT:  It is called "discovery."

11          MR. ZHANGHUI:  All right.

12          THE COURT:  And an attorney knows how to do that.

13          MR. ZHANGHUI:  Okay.

14          THE COURT:  Mr. Roble (phonetic), did you help him

15    file a proof of claim?

16          MR. BAUER:  Uh-huh.  Yes, he did, Your Honor.

17          THE COURT:  Excuse me?

18          MR. ROBLE:  I just wanted to say hello and I met

19    with this fine gentleman.  I don't know whether I --

20          THE COURT:  Okay.  I think it would be nice if you

21    met with him again just to talk to him.

22          MR. ROBLE:  (Indiscernible.)

23          THE COURT:  If you have not met Mr. Roble, meet

24    Mr. Roble.

25          MR. ROBLE:  I think we have met.

1          MR. ZHANGHUI:  I met him once, yes.

2          THE COURT:  I need to adjourn it to January 28th.

3    That's a long time out.

4          MR. ZHANGHUI:  January 28th?

5          THE COURT:  Uh-huh.

6          But if you have representation and you're very

7    comfortable with your representation, you probably will not

8    need to return, but that's up to you.

9          Yes, sir?

10          MR. BAUER:  Your Honor said the motion to dismiss

11    had been denied?

12          THE COURT:  I'm taking that back.

13          MR. BAUER:  You're taking it back?

14          THE COURT:  I'm taking it back.

15          MR. BAUER:  Okay.

16          THE COURT:  I'm taking it back on the record,

17    because there'll be no order.

18          MR. BAUER:  Okay.  I will bring with me on

19    January 28th a closing statement --

20          THE COURT:  No, you're going to be talking to

21    somebody else first.  We're not going to need it at that

22    point, at least I hope.

23          MR. BAUER:  That would be wonderful.

24          THE COURT:  Okay.  Very good.

25          MR. BAUER:  Thank you.

1          THE COURT:  Mr. Roble, just in case you know, you

2  signed the claim.

3          MR. ROBLE:  Oh, I did?

4          THE COURT:  And it was an unsecured, when it could

5  have been a secured, we think, but we don't know.

6          MR. ROBLE:  Okay.  Thanks, Your Honor.

7       (Proceedings concluded at 11:26 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.


/s/ William J. Garling                    October 8, 2024

William J. Garling, CET 543

Certified Court Transcriptionist

For Reliable